PASCUAL QUIÑONES, menor de edad, representado por su madre PASTORA QUIÑONES, demandante y apelante, v. PASCUAL QUIRÓS MARTÍNEZ, demandado y apelado.

*Número:* 12262   *Resuelto:* 21 de diciembre de 1961

*Miguel A. Ruiz* y *Fernando Pérez Rejis,* abogados de la Sociedad para Asistencia Legal, (Ponce), abogados del apelante; *Jorge Díaz Cruz,* abogado del apelado.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El menor Pascual Quiñones representado por su madre Pastora Quiñones, interpuso demanda de filiación y alimentos contra el recurrido. El menor nació el 23 de diciembre de 1943. La Sala sentenciadora declaró sin lugar la

demanda.   Concluyó como cuestión de hecho que el demandado y la madre del menor se conocieron para el mes de junio de 1941 siendo ella casada para dicha fecha aunque estaba separada de su esposo, y aquél comenzó a enamorarla, le escribía cartas y fueron novios.   En octubre de 1941 Pastora Quiñones se divorció de su esposo y el demandado continuó requiriéndola en amores hasta el año 1943.   Durante uno de los primeros meses de 1943 la invitó a que viviera con él en la residencia de la madre de él, y así comenzaron a vivir juntos en abril de dicho año.   Tres o cuatro meses después el demandado fue llamado a servir en las Fuerzas Armadas y durante su ausencia siguió escribiendo cartas a Pastora.   Esta no contestaba y cesaron las relaciones entre ellos.   Pastora abandonó la casa del demandado (a mediados de noviembre de 1943 según la prueba) y dio a luz en casa de sus padres.   El demandado regresó a principios de 1945 y luego contrajo matrimonio.   Estando en el Ejército las autoridades le informaron que Pastora alegaba que él era el padre de su hijo, cosa que negó.   Concluyó la Sala, resolviendo aparentemente un conflicto en la prueba, que el menor demandante nunca disfrutó de la posesión continua del estado de hijo natural del demandado.   La Sala apuntó el hecho que el 10 de marzo de 1947 este Tribunal dictó sentencia absolutoria en un caso criminal seguido contra el demandado por el abandono de este menor. [1]   Finalmente el Tribunal hizo la siguiente conclusión de hecho:

"El Tribunal hizo una observación sobre las características físicas del demandado en relación con el demandante.   Concluimos que el demandado tiene la tez blanca.   El menor demandante, por el contrario, tiene la tez intensamente oscura.   Pastora Quiñones es una mujer de tez acanelada.   Concluimos además, que Dulcidio Casiano es una persona de tez extremada-

---

[1] Opinión *Per Curiam* no publicada, *Pueblo* v. *Pascual Quirós* Núm. 11,724.   A la luz de los requisitos de prueba para un caso criminal y de la prueba allí desfilada, se concluyó que ésta era insuficiente para justificar la convicción.

mente oscura. El Tribunal no observó parecido físico alguno entre el demandado y el menor demandante. Por el contrario, el Juez que suscribe quedó hondamente impresionado por la extraordinaria falta de parecido entre el menor demandante y el demandado."

Entre sus conclusiones de derecho, después de citar el artículo 125 del Código Civil (ed. 1930) en lo referente a que el padre está obligado a reconocer al hijo natural . . . "[c]uando la madre fue conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo", la Sala determinó que la evidencia desfilada, a base de la cual había encontrado probados los anteriores hechos, revelaba que Pastora Quiñones, madre del menor demandante, fue conocida viviendo en concubinato con el demandado durante parte del embarazo. Pero opinó que el solo hecho de habérsele conocido viviendo en concubinato con la madre del demandante necesariamente no significaba que el demandado era el padre de dicho menor, y que en este caso, por el contrario, *existía una cadena de factores y circunstancias que tendían a indicar la no paternidad*, entre dichas circunstancias el hecho de que al comenzar la relación concubinaria Pastora Quiñones tenía un mes de embarazo y que en 1942 y 1943 ella llevaba relaciones amorosas con Dulcidio Casiano; que no había parecido físico entre el menor demandante y el demandado, mientras que sí existía parecido físico entre el menor y Dulcidio Casiano. Así declaró sin lugar la demanda.

Antes de entrar en el problema que realmente nos preocupa ahora, hay que aclarar que el récord no sostiene con un grado de convicción mínima que la madre del menor llevara *relaciones amorosas* con el referido Dulcidio. Sólo dos testigos se manifestaron sobre este hecho. Uno fue Epifanio González quien dijo que en un baile vio a Pastora Quiñones y a Dulcidio en casa de Santiago Lugo, casa de familia en que hacían bailes; y en dos o tres ocasiones en juegos de

pelota en una liga de campo también los vio hablando amigablemente, amistosamente. No sabe lo que habría. Dijo que esto ocurría en el año 1943. El testigo era un jugador de tercera base. La otra persona que manifestó el hecho fue el testigo Clemente Matos. Dijo haber visto a Dulcidio Casiano acompañando a Pastora y en bailes en dos o tres ocasiones. Los vio en casa de Amalio Casiano hablando y luego vio que se cogían las manos. Dijo que esto ocurría finalizando el año 1943 más o menos.

En cuanto a Dulcidio, Pastora declaró, y el hecho no fue controvertido, que lo conoció desde que nació y visitaba la casa de sus padres porque el papá de él era primo de la mamá de ella. En otras palabras, entre Dulcidio Casiano y Pastora Quiñones había parentesco en el sexto grado.

No hay prueba sustancial en el récord para la conclusión de relaciones amorosas entre este Dulcidio y la madre del menor para la época crucial o sea cuando ella pudo concebir al demandante. Por otra parte nada hay en el récord que hiciera imposible el hecho que esta señora pudiera concebir del demandado durante el período crucial.[2] ■

Sin embargo, el problema inmediato que afrontamos ahora es otro: el demandado usó una fotografía en la que habían tres personas, en la cual Dulcidio Casiano fue identificado por algunos de sus testigos. La Sala sentenciadora negó la admisión en evidencia de dicha fotografía, entre otros fundamentos porque no había constancias de las circunstancias en que la misma se había tomado y de las demás situaciones y dispuso que se marcara como evidencia ofre-

---

[2] El niño nació en 23 de diciembre de 1943. La duración normal de la preñez es de 266 días y el nacimiento ocurre diez meses lunares (280 días) siguientes al primer día del último período menstrual. Un 80% de nacimientos ocurren dentro del período de dos semanas antes o de dos semanas después de la fecha calculada. *Lawyers' Medical Cyclopedia,* (Vol. 5, pág. 369). No hay imposibilidad, según el récord, que para la fecha en que el demandado estaba requiriendo a la demandante que se fuera a vivir con él, lo cual fue así, ocurriera la concepción.

cida y no admitida. En la conclusión de hecho anteriormente transcrita la Sala expresó que el demandado era una persona de tez blanca, la madre del demandante de tez acanelada, y que el menor tenía la tez intensamente oscura; que no había observado parecido físico alguno entre el demandado y el demandante, quedando impresionada por la falta de dicho parecido físico. En sus conclusiones de derecho fue aún más lejos y determinó *que existía parecido físico entre el menor y Dulcidio Casiano*. La Sala no nos deja la menor duda de que estos hechos influyeron notablemente en su ánimo al resolver el caso.

Obviamente se cometió un error que dejó indefensa a la parte demandante. Dulcidio Casiano nunca estuvo ante el Tribunal y la Sala hizo uso, en un aspecto básico y decisivo para ella, de una prueba que no había admitido. El recurrido nos dice sencillamente que el Tribunal se dio cuenta al resolver que había negado la admisión de dicha prueba indebidamente y que subsanó el error. Lo grave es que la parte demandante quedó privada de traer prueba para contradecir los efectos de dicha evidencia, de haber sido ésta admitida en el curso del juicio.

No pretendemos ahora hacer una incursión por los ámbitos del agustino Méndel y las complejas, caprichosas y hasta misteriosas leyes genéticas de la herencia. Sería especular sin base firme en el récord, sobre todo que la Sala sentenciadora hace mención únicamente al color, y no se sabe de otras características raciales del menor. Altenburg, *Genetics* (ed. rev. 1957), *The Negro—White Cross*, págs. 76–83 (Biblioteca Escuela de Medicina U.P.R.) ; Dobzhansky, *Evolution, Genetics, and Man* (1955) *Inheritance of the Skin Color in Man*, págs. 40–42 (Biblioteca Escuela Médica U.P.R.).

Como posiblemente sea difícil para la Sala sentenciadora hacer nuevas conclusiones con abstracción absoluta del conocimiento de esta evidencia rechazada, se dispone al devolverse el caso que a la parte demandante le sea permitido practicar

prueba, pericial inclusive, que pueda desvirtuar la considerada por la Sala, así como cualquier prueba de ambas partes que tienda a arrojar luz sobre la situación y conduzca a una cumplida justicia para quien corresponda.

*La sentencia recurrida se dejará sin efecto.*